# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

|  |  |  |
|---|---|---|
| | § | |
| YOLANDA SAUCEDO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:07-CV-0129-C |
| | § | ECF |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed July 6, 2007, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act.[1] Plaintiff filed a brief in support of her complaint on April 2, 2008 ("Pl. Brief"), and Defendant filed a brief on May 5, 2008. The parties consented to having the United States Magistrate Judge conduct all further proceedings in this case on August 22, 2007 (Doc. 10), and November 14, 2007, 2008 (Doc. 19). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

---

[1] The ALJ's decision indicates that Plaintiff filed applications for both disability insurance benefits and supplemental security income benefits. However, various documents in the record indicate that Plaintiff filed an application for disability benefits only. Tr. 45, 53, 58, 64. In addition, Plaintiff's representative indicated at the hearing that no Title XVI application was filed in this case.

# I. STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on November 5, 2005, alleging disability beginning March 24, 2005. Tr. 14. Plaintiff's applications were denied initially and upon reconsideration. Tr. 14, 58-61, 64-68. Plaintiff filed a Request for Hearing by Administrative Law Judge on April 27, 2006, and this case came for hearing before the Administrative Law Judge ("ALJ") on October 23, 2006. Tr. 14, 296-324. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 299-312, 319-24. Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 312-18. The ALJ issued a decision unfavorable to Plaintiff on December 28, 2006. Tr. 11-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements through at least December 31, 2010, and Plaintiff had not engaged in substantial gainful activity at any time since March 24, 2005. Tr. 16. Plaintiff has "severe" impairments, including status-post repair of torn left rotator cuff and right-hand carpal tunnel syndrome. *Id.* Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 19.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 17.

The ALJ found that Plaintiff could not return to her past relevant work as a distribution clerk, a payroll clerk, a billing clerk, or a customer service representative. Tr. 20. He noted that Plaintiff was considered an individual closely approaching advanced age with a high school education. 20 C.F.R. §§ 416.963, 416.964; Tr. 20.

The ALJ found that Plaintiff retained the RFC to perform a reduced range of light work activity. Tr. 17. He found that Plaintiff could perform a range of light work, limited in that she not be required to: climb scaffolds, ladders, and ropes; lift solely with her left dominant upper extremity; work with her upper left extremity other than for guiding, lifting, or push and pull functioning; push, pull, or perform extended reaching with her left dominant upper extremity; handle or finger objects with her left dominant upper extremity; handle or finger with her right upper extremity more often than frequently; nor work at unguarded heights or near unguarded hazardous mechanical equipment. Tr. 20. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 21. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of information clerk, with 127,000 jobs nationally; gate guard, with 89,000 jobs nationally; and meter reader, with 130,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id*.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 20, 2007. Tr. 9-10. The Appeals Council denied Plaintiff's request and issued its opinion on April 25, 2007,

indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

On July 6, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy. Tr. 21-22.

## III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ erred in making his credibility determination, failed to properly develop the record regarding Plaintiff's mental impairment, and failed to appropriately consider the opinion of Plaintiff's treating physician. Plaintiff further claims that the ALJ erred at step 5 in finding that Plaintiff retains the ability to perform a significant number of jobs existing in the national economy because he failed to elicit testimony regarding the transferrable skills gained by Plaintiff in her prior work and relied upon the testimony of the VE which conflicted with the Dictionary of Occupation Titles ("DOT").[2]

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.      Whether the ALJ erred in making his credibility determination.**

Plaintiff argues that the ALJ failed to properly assess Plaintiff's credibility and erred in rejecting her allegation that she is disabled.

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

---

[2]      *See*  United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT").

consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id*.

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if

supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)).

In his opinion the ALJ notes Plaintiff's testimony, including her claims of pain in her left shoulder, carpal tunnel syndrome and pain in her left hand, carpal tunnel symptoms in her right hand, and some limitation in her ability to use her hands. Tr. 17. The ALJ found that Plaintiff's statements concerning her impairments and their impact on her ability to work are credible only to the extent that her medically determinable impairments compromise her ability to perform some types of work. *Id.* He found that her allegations that she cannot work at all are unsupported. *Id.*

The record indicates that Plaintiff underwent a functional capacity evaluation on October 19, 2005, by Wayne Soignier, M.D. Tr. 172-93. Dr. Soignier opined that Plaintiff has a 14% upper extremity impairment. Tr. 174. He noted that Plaintiff demonstrated the ability to sit and stand for 15 minutes and to intermittently sit, stand, and walk for 30 minutes. Tr. 175. He noted that Plaintiff had significantly below-normal grip strength, with consistent effort during standard hand grip strength testing. *Id.* However, Plaintiff demonstrated a submaximal effort during maximum voluntary effort hand grip testing and during rapid exchange grip testing. *Id.* Dr. Soignier indicated that Plaintiff did not provide consistent effort during static strength testing. Tr. 176. He opined that she provided inconsistent effort during the evaluation, provided a submaximal effort, and was at a PDC level of indeterminate. He noted that an indeterminate PDC indicates an overall submaximal or inconsistent effort which suggests problems such as simple lack of effort, malingering, somatoform disorder, or self limitation secondary to pain. *Id.* He opined that Plaintiff was capable of at least sedentary level activity. *Id.*

Plaintiff was treated after her injury at work by Paul W. Meriwether, M.D., an orthopedic specialist. Tr. 245. Dr. Meriwether noted on April 6, 2005, that an x-ray of the shoulder showed no fracture or other abnormality. Tr. 244. He noted that upon physical examination, there was no

swelling or other evidence of recent trauma to her left shoulder or upper extremity. *Id*. He noted that active range of motion was sightly restricted due to pain and passive range of motion was full, with decreased strength in the left shoulder and upper extremity. *Id*. He indicated his opinion that Plaintiff sustained a contusion and soft tissue strain of the left shoulder which would improve with conservative treatment and referred her for physical therapy. *Id*. On April 20, 2005, Dr. Meriweather noted that Plaintiff reported no improvement and opined that Plaintiff may have a rotator cuff tear in the shoulder. Tr. 243. He made the decision to obtain an MRI scan of the left shoulder and indicated that Plaintiff should continue physical therapy and remain off work. *Id*. The MRI indicated mild hypertrophic changes at the AC joint and an otherwise unremarkable left shoulder. Tr. 241. The impression was impingement syndrome. Tr. 240. Dr. Meriweather noted on May 4, 2005, that Plaintiff was given a cortisone injection and that he recommended conservative treatment for left shoulder impingement. Tr. 239. Plaintiff reported little improvement and an arthroscopy with subacromial decompression was scheduled. Tr. 237. Dr. Meriwether noted that Plaintiff was instructed on range of motion exercises for her shoulder after the arthroscopy. Tr. 221. On June 7, 2005, Plaintiff reported improvement, her sutures were removed, and she was referred for physical therapy. Tr. 219. A progress note dated June 22, 2005, indicates that Plaintiff has improved with physical therapy and her therapist indicated she might have a low pain tolerance which was interfering somewhat with her therapy. Tr. 218. Dr. Meriwether noted on July 6, 2005, that Plaintiff had good passive range of motion in the shoulder with slight restriction of active motion and pain. Tr. 217. Plaintiff continued to report pain and Dr. Meriwether indicated that a decision to perform manipulation of the left shoulder under anesthesia was made. Tr. 216. On September 14, 2005, Dr. Meriwether noted that Plaintiff reported pain with exercises during therapy and would begin crying during physical therapy sessions. Tr. 201. He opined that Plaintiff may have become depressed from her lack of improvement and placed her on Elavil. He also injected the left shoulder again.

*Id.* Dr. Meriwether noted that during the manipulation under anesthesia, Plaintiff's shoulder was actually fairly free in its passive range of motion. Tr. 200. He noted that Plaintiff may have some emotional issues, but she quit taking the medication he prescribed for her. *Id.* He noted that Plaintiff complained of weakness in her grip and dropping things from her left hand, the first time she complained of this, and was told that the shoulder injury would not cause weakness in her grip. *Id.* Plaintiff was released to her unrestricted work on October 3, 2005. *Id.* Plaintiff reported that she did not want to go back to work, even after her employer agreed that she could work four hours rather than the usual eight hours. *Id.* Dr. Meriwether opined that another surgery would not benefit Plaintiff, that Plaintiff does not want to return to work, and that Plaintiff was exaggerating her symptoms. *Id.* A progress note from Dr. Meriwether dated November 21, 2005, indicates that it was his feeling that Plaintiff was not interested in returning to work where she was employed and that she provided inconsistent effort at the functional capacity evaluation. Tr. 196. He opined that further treatment would not be beneficial and dismissed Plaintiff from his care, noting that he agreed with the date of maximum medical improvement and the impairment rating. *Id.*

Plaintiff was thereafter treated by S. Daggubati, M.D. He noted Plaintiff's report of pain in her shoulder and her reports of numbness and tingling in the left hand. Tr. 252. Dr. Daggubati noted his impression on February 15, 2006, of right carpal tunnel syndrome, acute tendinitis with puffy fingers and weak grip on both sides, and periarthritis of the left shoulder with marked limitation of range of motion. Tr. 250. He noted that motor conduction velocities were within normal limits, although distal latency of the right median nerve was prolonged, consistent with right carpal tunnel syndrome. *Id.* Dr. Daggubati indicated in a July 25, 2006, letter addressed "to whom it may concern" that Plaintiff had left carpal tunnel syndrome with a weak grip and periarthritis of the left shoulder with marked limitation of range of motion. Tr. 281. He opined that Plaintiff "cannot work with the left hand due to periarthritis, carpal tunnel syndrome, and also causalgia."

*Id.* In a similar letter dated January 31, 2007, Dr. Daggabut opines that Plaintiff cannot make a fist, has left carpal tunnel syndrome with symptoms, periarthritis of the left shoulder with marked limitation of the range of motion, and causalgia with numbness and tingling in the left upper extremity, mainly in the hand. Tr. 295. He indicated that Plaintiff is "disabled at this time and is getting treatment." *Id.*

In his opinion the ALJ discussed the medical evidence of record and noted Dr. Meriwether's opinion that Plaintiff was not interested in returning to her former work and Dr. Soignier's opinion that Plaintiff provided inconsistent effort during the functional capacity evaluation. Tr. 18-19. He noted that Plaintiff wears no braces on either hand and engaged in activities of daily living, including personal care tasks. Tr. 19. He noted that Dr. Daggubati made no objective findings concerning degrees of passive or active shoulder range of motion. *Id.* He noted that Dr. Meriweather and Dr. Soignier reported similar conclusions and findings. Tr. 20. He found that the level of subjective pain-related limitations alleged by the Plaintiff were overstated and were not a reliable measure of her RFC. *Id.*

The record demonstrates that the ALJ indeed considered Plaintiff's subjective complaints and limitations; Plaintiff argues that the ALJ did not consider them *enough* in making his credibility determination. In this case the ALJ made a finding regarding Plaintiff's subjective complaints and in fact credited them, but not to the extent that Plaintiff wished. "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir.1991) (citing *Villa*, 895 F.2d at 1022). Subjective evidence need not take precedence over objective evidence, and the factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024. The court finds that the ALJ's evaluation

of Plaintiff's credibility and the credibility determination is supported by substantial evidence. The ALJ did not err in making his credibility determination.

Plaintiff's allegations regarding a possible mental impairment are addressed separately below to the extent that such claim is separate from her claim that the ALJ erred in making his credibility determination.

**B.** **Whether the ALJ erred by failing to fully develop the record regarding Plaintiff's possible mental impairment.**

Plaintiff alleges that the ALJ failed to develop the record and consider the possibility that her pain and symptoms were caused by her mental condition.

Dr. Soignier performed Plaintiff's functional capacity evaluation on October 19, 2005. Tr. 172. She reported no depression or anxiety since her injury. *Id.* Dr. Meriwether noted that Plaintiff might have emotional issues or depression and prescribed Elavil which Plaintiff stopped taking. Tr. 200.

Clearly, the ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (quoting *Newton*, 209 F.3d at 458). The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). The court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996)). In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). This court will not reverse for a failure to develop the record unless Plaintiff can show that she was prejudiced as a result.

Plaintiff argues that the evidence of record indicating that Plaintiff may have depression and cried during physical therapy was sufficient to put the ALJ on notice that Plaintiff's pain was likely due in part to a mental impairment and required that the ALJ develop the record by purchasing a consultative exam.

Under some circumstances, a consultative examination is required to develop a full and fair record. 20 C.F.R. § 404.1517. The decision to require such an examination is discretionary. *Jones*, 829 F.2d at 526. A consultative examination for additional testing is required when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on a Social Security disability claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). "Isolated comments by a claimant are insufficient, without further support, to raise a suspicion of non-exertional impairment." *Brock*, 84 F.3d at 728.

A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). The ALJ's duty to investigate "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

Plaintiff did not raise the issue of her possible mental impairment, and Plaintiff has identified no evidence that she could or would adduce that would cause a different result. In *Brock* the claimant wrote a letter to the ALJ after his hearing stating that he suffered from depression and the effects of past drug abuse, did not mention non-exertional impairments in his original request for benefits, never sought medical treatment for such impairments, and did not mention such

impairments at his hearing.  The Court held that such assertions constituted the "kind of isolated comments which are insufficient to raise a suspicion of non-exertional impairment" and did not trigger a duty to order a consultative examination in order to adequately develop the record.  84 F.3d at 728.  It is clear in this case that the references in the record to possible depression or mental impairment were the sort of isolated comments which are insufficient to trigger the ALJ's duty to further develop or order a consultative examination.

Plaintiff points to *Latham v. Shalala*, arguing that the ALJ erred by failing to consider the possibility that her pain and other symptoms might result from her mental condition.  *See* 36 F.3d 482, 484 (5th Cir. 1994).  In *Latham* the Fifth Circuit noted that "[w]hen medical findings do not substantiate the existence of physical impairments capable of producing alleged pain and other symptoms, the ALJ must investigate the possibility that a mental impairment is the basis of the symptoms."  *Id.* (citing 20 C.F.R. § 404.1529(b)).  However, in *Latham* the ALJ had "dismissed many of [the claimant's] complaints of pain and severe discomfort when he decided that [the claimant's] physical ailments were not serious."  *Id.*  There was also evidence in the record that the claimant had been diagnosed with a somatization disorder, a basic feature of which is the presence of physical symptoms for which there are no demonstrable organic findings.  *Id.* (citing 20 C.F.R. Subpt. P, App. 1, § 12.07).  In this case the ALJ found that Plaintiff experienced some pain but found that such pain was not so severe as to preclude the exertional requirements of a limited range of light work.  Tr. 19.  The ALJ found that Plaintiff's subjective complaints of pain-related limitations were overstated and were not a reliable measure of her RFC.  Tr. 20.  The ALJ asked Plaintiff if she was taking medication for depression at the hearing.  Tr. 306.

The court finds that the ALJ did not err by failing to consider or develop the record regarding any mental impairment and further finds that Plaintiff has failed to demonstrate any prejudice from the alleged failure to develop the record.

**C.**     **Whether the ALJ erred by failing to appropriately consider the opinion of Dr. Daggubati, a treating physician.**

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinion of Dr. Daggubati, a treating physician, who opined that Plaintiff is unable to work.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). The ALJ was thus not required to give any weight to the opinion of Dr. Daggubati insofar as he indicated that Plaintiff was disabled or unable to work.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and

severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620. Therefore the ALJ was not required to discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) in declining to accept Dr. Daggubati's opinion that Plaintiff was disabled or unable to work.

Plaintiff argues that the ALJ erred by purporting to rely upon the findings of Dr. Soignier's functional capacity evaluation and his assignment of a 14% whole person rating in discrediting Dr. Daggubati's opinion that Plaintiff is unable to work. Plaintiff argues that Dr. Soignier in fact found that she has a 24% upper extremity impairment. The record demonstrates that Dr. Soignier opined that "[t]his is a 14% upper extremity impairment," explaining that there was also a 10% upper extremity impairment assigned for distal clavicle resection, which added together equaled a 24% upper extremity impairment, which converts to a 14% whole person impairment. Tr. 174.

The ALJ correctly noted that Dr. Daggubati made no objective findings concerning degrees of active or passive range of motion and opined that Plaintiff was unable to work with her left hand. Tr. 19. He noted that upon examination, Dr. Daggubati observed full range of motion of the joints except the left shoulder and no neurological deficit. *Id.* He noted that the motor conduction studies were within normal limits, although findings for the right median nerve were consistent with carpel tunnel syndrome. The ALJ noted that he gave greater weight to the opinions of Dr. Meriwether, who had observed improvement in Plaintiff, and to the opinions of Dr. Soignier, noting that these physicians examined Plaintiff and came to similar conclusions. Tr. 20.

The ALJ was required to give no special weight to Dr. Daggubati's statements indicating that Plaintiff was disabled and unable to work. He also gave specific reasons for discounting any medical opinions of Dr. Daggubati. The ALJ demonstrated good cause for discounting such

opinions. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ did not err by failing to give appropriate weight to Dr. Daggubati's conclusory statements indicating that Plaintiff was disabled or unable to work and did not err in evaluating his opinions.

**D.      Whether the ALJ failed to carry his burden at step 5 by relying upon the opinion of a the VE which failed to indicate Plaintiff's transferable skills and which conflicted with the DOT.**

Plaintiff argues that the ALJ erred and failed to carry his burden at step 5 to show that she can perform other work which exists in significant numbers in the national economy. She argues that the ALJ erred in finding that the transferability of skills is not material in this case and by failing to elicit testimony from the VE on the transferable skills that Plaintiff acquired in her past work. She also argues that the testimony of the VE does not constitute substantial evidence to support the step 5 finding because the testimony of the VE conflicts with the DOT.

Where a claimant cannot perform the full range of a specific level of work activity or has significant nonexertional impairments, the ALJ may not mechanically apply the Grids, although they may be used as a framework. Application of the Grids is appropriate "when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). The ALJ should make an individualized determination of the claimant's ability to perform specific jobs in the national economy where there are nonexertional limitations. *Carry v. Heckler*, 750 F.2d 479, 483 (5th Cir. 1985) (citing *Parris v. Heckler*, 733 F.2d 324, 326 (4th

Cir.1984)). Plaintiff correctly notes that the Grids are not applicable in this case. She argues that the ALJ erred in stating that transferababilty of job skills is not material to the determination of disability because using the Grids as a *framework* supports a finding that the claimant is not disabled whether or not she has transferable skills.

Plaintiff correctly notes that the ALJ did not mechanically apply the Grids and obtained VE testimony but argues that "his failure to elicit what, if any, skills were transferable from Plaintiff's work was a critical error." Pl. Brief at 11. She argues that the ALJ "never allow[ed] the vocational expert to identify the skills the expert contends are transferable from Plaintiff's past work." *Id*.

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. § 404.1565. Transferable skills are those "that can be used in other jobs, when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs ." 20 CFR § 404.1568(d). If the claimant has acquired skills through his past work, the Commissioner will consider him to still have those skills unless the claimant cannot use them in other skilled or semi-skilled work that he can now do. 20 C.F.R. §§ 404.1565(a), 1568(d); Soc. Sec. Ruling 82-41 (February 26, 1979) ("SSR 82-41"). Transferability of skills is most probable or meaningful with jobs where the same or lesser degree of skill is required because people are not expected to do more complex work than they have previously performed. 20 C.F.R. § 404.1568(d); SSR 82-41. Section 404.1568(b) of 20 C.F.R. defines semi-skilled work, such as the job of meter reader and gate guard, both of which were identified by the VE as "work which needs some skills but does not require doing the more complex work duties." 20 CFR § 404.1568(b).

SSR 82-41 notes that an ALJ must make certain findings of fact and include them in the written decision, including, when a claimant is found to have transferable skills. In that case, the

acquired work skills must be identified, the specific occupations to which the skills are transferable must be cited in the ALJ's decision, and the evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included. This evidence may be found in VE testimony relied upon by the ALJ. SSR 82-41 does not require an ALJ to make an explicit finding that a claimant of advanced age who has acquired transferable skills can perform the identified work with "very little, if any, vocational adjustment."

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

In this case, as the Plaintiff correctly notes, the VE testified that neither of the two semi-skilled jobs identified by the VE utilized any job skill that Plaintiff acquired in her past work. Tr. 316. Plaintiff argues that without testimony from the VE indicating what Plaintiff's transferable skills are, "it is impossible to know whether Plaintiff's transferable skills are transferable to any work Plaintiff can actually perform." Pl. Brief at 12. However, as the VE testified, any transferable skills Plaintiff may have acquired are not utilized by the jobs identified. Tr. 314. The VE testified that the gate guard job was on the low end of semi-skilled. Tr. 316. The VE testified that the gate guard and meter reader jobs were entry level jobs. *Id.* She testified that neither of these jobs utilized any transferable skills that Plaintiff would have obtained in her prior work. *Id.* As the ALJ noted, this testimony demonstrates that the issue of transferability was not material in this case because the jobs identified by the VE did not utilize any transferable skills that Plaintiff may have acquired in

her former work.  20 C.F.R. § 404. 1568(c) provides that semi-skilled work is work which needs some skills. 20 C.F.R. § 404. 1568(c).  SSR 82-41 notes that at the lower end of semi-skilled work, "[t]ransferability of skills is usually not found," and further provides that an ALJ can often, without assistance, make the determination that a worker has very little vocational advantage over an unskilled person and does not have transferable skills.  In a case in which the ALJ found that the claimant had transferable skills but did not identify the skills, the Sixth Circuit deferred to the Commissioner's position that SSR 82-41 does not require that an ALJ identify the skills unless the ALJ relies solely on the Grids in determining whether the claimant can actually perform available work. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004).

Even if the ALJ did indeed commit error by failing to elicit testimony regarding the transferable skills that Plaintiff acquired in her past work, such failure constitutes harmless error and remand is not necessarily required.  Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981) (*per curiam*).  An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required.  *Newton*, 209 F.3d at 459.  Should the agency violate its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand.  *Hall*, 660 F.2d at 119.  However, rulings lack force of law and are not binding on courts.  *Id.*  Thus, even if the ALJ violated SSR 82-41, such violation does not *ipso facto* mean that the Commissioner's decision must be reversed; rather, the claimant must demonstrate that he was prejudiced by the error.  *Id.*  The appropriate question is thus whether such failure is prejudicial.

A harmless error analysis applies to administrative failure to comply with a regulation.  *See Frank,* 326 F.3d at 622.  Violation of a social security ruling merits remand only when a claimant

affirmatively demonstrates prejudice. *Hall,* 660 F.2d at 119. The two concepts are closely related. Prejudice is established by showing that additional evidence could have been produced and "that the additional evidence might have led to a different decision." *Newton,* 209 F.3d at 458. An error is harmless unless there is reason to think that a remand might lead to a different result. *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989). As such, improprieties noted by Plaintiff will constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Here, the VE testified that although Plaintiff had acquired transferable skills, such skills were not utilized in the jobs identified. Therefore, the ALJ's failure to elicit testimony from the VE regarding Plaintiff's transferable skills constitutes, at most, harmless error.

Plaintiff also alleges that the testimony of the VE is deficient because it conflicts with the DOT. Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills. *See* Soc. Sec. Ruling 00-4p (December 4, 2000) ("SSR 00-4p"). This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other. *Id.* Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* SSR 00-4p notes that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." This ruling also requires the ALJ to ask about any possible conflicts between the testimony of the VE and the information provided in the DOT. *Id.*

The Social Security Administration has taken "administrative notice" of the DOT. *See* 20 C.F.R. § 416.966(d)(1). However, the Fifth Circuit has recognized that "the DOT is not

comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey*, 230 F.3d at 145 (citing *Fields,* 805 F.2d at 1171).

Plaintiff argues that the job of information clerk requires the ability to frequently reach, handle, and finger. The ALJ questioned the VE regarding any possible conflict with the information in the DOT, and the VE testified that there was no conflict. Tr. 316. Plaintiff's representative was given the opportunity to question the VE and did so. Tr. 316-18.

In *Carey* the Fifth Circuit addressed a case in which the claimant argued that the testimony of the VE, which the ALJ relied upon, conflicted with the *Dictionary of Occupational Titles.* 230 F.3d at 146. The Court again noted that "[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed," and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145; *see Fields*, 805 F.2d at 1170. The Court indicated its agreement with the majority of the circuits that the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so.

Here, the ALJ questioned the VE regarding whether his testimony conflicted with the DOT, and he testified that it did not. Plaintiff's representative was given the opportunity to question the VE and did so. Like the representative of the claimant in *Carey*, Plaintiff's representative did not further question the VE about the issue of whether there was a conflict between the DOT and the testimony of the VE, nor did he question the VE regarding whether the number of jobs identified reflected jobs that could be performed with the left upper extremity limitations in the RFC assessment. *See Carey*, 230 F.3d at 146. The VE testified that the jobs identified could be performed with the limitations included in the RFC assessment. The value of a VE is the ability to

testify regarding whether a job may be performed with specific limitations and under specific conditions. The record as a whole provides an adequate basis for the ALJ to rely upon the testimony of the VE, and in so doing, the ALJ did not commit reversible error.

The court finds that the ALJ did not commit reversible error at step 5 in the sequential evaluation process by failing to elicit testimony regarding what Plaintiff's transferable skills are and did not err in relying upon the testimony of the VE.

Having found that the ALJ did not commit reversible error, the court further finds that both the RFC finding and the ALJ's decision are supported by substantial evidence in the record.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the ALJ did not commit reversible error, that the ALJ's opinion and the RFC determination are supported by substantial evidence in the record, that the Commissioners's decision should be affirmed, and that Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's applications for a period of disability and disability insurance benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed July 6, 2007, is **DISMISSED WITH PREJUDICE.**

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 16th day of September, 2008.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**